IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT HILLMAN,          CASE NO. 2:08-cv-987

                                JUDGE WATSON

       Petitioner,          MAGISTRATE JUDGE KEMP

v.

WARDEN, CHILLICOTHE CORRECTIONAL
INSTITUTION,

       Respondent.

ORDER and
REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition,

respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the

reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED**. Petitioner's request for release on bond, opposition to application of 28

U.S.C. §2254(d), (e), to this case, request for discovery, motions to strike respondent's

Return of Writ, for injunctive relief, summary judgment, application for a writ of insurance,

and for an evidentiary hearing, Doc. Nos. 5, 6, 12, 17-20, all are **DENIED**. Petitioner's

motion for judicial notice and request that his conviction be vacated, Doc. No. 22, likewise

is **DENIED**.

## MOTION FOR RELEASE ON BOND

Petitioner requests release on bond pending a decision in these proceedings. Doc.

No. 5.

> To receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts surrounding the petition and the existence of "some circumstance making the [motion for bond] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964); *Dotson v. Clark,* 900 F.2d 77, 79 (6th Cir.1990). "There will be few occasions where a prisoner will meet this standard." *Dotson*, 900 F.2d at 79. Because a habeas petitioner "is appealing a presumptively valid state conviction ... it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir.1993).

*Smith v. Bell,* 2007 WL 671341 (E.D. Michigan February 28, 2007). Petitioner has failed to

meet this standard here. His request for release on bond, Doc. No. 5, therefore is **DENIED.**

## MOTION TO STRIKE RETURN OF WRIT

Petitioner has filed a motion to strike the Return of Writ pursuant to Rule 12(f)[1] of

the Federal Rules of Civil Procedure and request for judgment on the pleadings on the

grounds that respondent improperly responded to petitioner's habeas corpus petition by

"perpetuating the fraudulent statements made by the state prosecutor's upon the courts"

and failing to admit the merit of petitioner's claims. *Motion to Strike*, Doc. No. 17. Petitioner

---

[1] Rule 12(f) provides:

Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

requests respondent be found in contempt of court for committing fraud. *See id.* In support of this motion, petitioner has attached his own affidavit, in which he states that he was convicted on the basis of false evidence and alleges that portions of the trial transcripts have been altered by government officials, as well as documents related to his state court trial. Petitioner has also filed a request for "injunctive relief" pursuant to Rule 37 of the Federal Rules of Civil Procedure, Doc. No. 18, in which he again requests the Return of Writ to be stricken "for representing a fraud (sham) in an attempt to corrupt the outcome of these... proceedings." Additionally, petitioner has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure Doc. No. 19, and an "insurance of writ application" pursuant to 28 U.S.C. §2243,[2] Doc. No. 20, in which petitioner

---

[2] 28 U.S.C. 2243 provides:

Issuance of writ; return; hearing; decision
A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.

When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.

Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.

The return and all suggestions made against it may be amended, by leave of court, before or after being filed.

The court shall summarily hear and determine the facts, and dispose of the matter as law and

complains that the respondent has not responded to his prior motions and requests immediate release.

To grant a request for summary judgment on the grounds that respondent failed to answer petitioner's allegations

> would be tantamount to granting Petitioner a default judgment, which is relief that is unavailable in habeas corpus proceedings. *Allen v. Perini,* 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.1970), *superseded on other grounds by statute as stated in, Cobb v. Perini,* 832 F.2d 342 (6th Cir.1987); *Lemons v. O'Sullivan,* 54 F.3d 357, 364-65 (7th Cir.1995) ("Default judgment is an extreme sanction that is disfavored in habeas corpus cases."); *Gordon v. Duran,* 895 F.2d 610, 612 (9th Cir.1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve,* 830 F.2d 184, 187 (11th Cir.1987) ("a default judgment is not contemplated in habeas corpus cases").

*Alder v. Burt,* 240 F.Supp.2d 651, 677 (E.D. Michigan 2003). Therefore, petitioner's request for summary judgment is **DENIED**. Further, the record is without basis to support any of petitioner's requests. Therefore, all of the foregoing motions, Doc Nos. 17-20, are **DENIED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The charge herein stems from a burglary that occurred on May 7, 2006, at 186 East 16th Avenue, Columbus, Ohio. The following facts were adduced at trial. Derek Haggerty lived at

---

justice require.

186 E. 16th Avenue (hereafter "E. 16th"). At 2 a.m. on May 7, 2006, Mr. Haggerty's roommates were out of town, and he was lying in his bedroom watching television when he heard "footsteps" and "a lot of walking back and forth." (Tr. at 22.) After hearing the back door to the house open from the inside, Mr. Haggerty looked outside and saw a man exiting the house through the back door carrying a white bag.

Mr. Haggerty called 9-1-1, gave a description of the man he saw, and told the dispatcher to tell the police to go to the back of the house. While on the phone with the dispatcher, Mr. Haggerty told her the suspect was walking towards 17th Avenue, wearing dark clothing, carrying a white bag and wearing a white hat. Mr. Haggerty then saw a police officer arrive and begin looking for the suspect with a flashlight. Mr. Haggerty went outside, losing sight of the suspect for approximately "20 seconds." *Id.* at 31. Mr. Haggerty told the police officer the suspect went towards 17th Avenue, whereupon Mr. Haggerty and the officer observed a person in front of a dumpster wearing "dark clothing and a light colored hat, a whitish colored hat." *Id.* at 32. The hat was described by Mr. Haggerty as "a toboggan type cap." *Id.* at 39. When asked if the person at the dumpster matched the description of the person he saw going into and out of his residence, Mr. Haggerty replied "absolutely." *Id.* Mr. Haggerty identified the property in the bag as belonging to him and his roommates.[FN1] Mr. Haggerty also noted after the burglary that a window to the residence was opened, though it was closed when he went to bed. Mr. Haggerty testified that no one gave this individual permission to be in the house that night or to take the property.

FN1. The property consisted of two gaming systems, video games, DVDs, CDs, and miscellaneous food items.

Sergeant Steve Shinaver of the Columbus Police Department testified he was dispatched to a burglary call at E. 16th Avenue when he was seven or eight blocks from the scene. Upon arriving at the scene, Sgt. Shinaver saw appellant standing in front of a dumpster near E. 16th matching the description given by the 9-1-1 dispatcher, i.e., a black male wearing a white hat, dark clothing, and holding a white bag. When appellant

saw Sgt. Shinaver, appellant threw the bag on the ground. When he approached appellant, Sgt. Shinaver observed a white bag containing miscellaneous items, such as CDs and DVDs, and a dark green blanket with video games and food items wrapped inside it. Sgt. Shinaver apprehended appellant for identification purposes. Thereafter, the victim, Mr. Haggerty, identified appellant. Mr. Haggerty also identified the items in the bag and the blanket as belonging to him and his roommates. A light gray cap with the letter "P" on the front and black trim was taken from appellant. Sgt. Shinaver also testified appellant was wearing a "dark green sweater or sweatshirt and a darker colored shirt underneath." *Id.* at 83.

Detective Ronald Love of the Columbus Police Department testified that appellant did not live near E. 16th at the time of the burglary. Based on the victim's identification of appellant, Det. Love explained he did not find it necessary to attempt to obtain fingerprints. Also, Det. Love explained he attempted to get the clothing appellant was wearing the night of his arrest, but was informed by the Franklin County jail that the clothing appellant had been wearing that night had been traded for clothing appellant needed for court. Therefore, the clothing appellant was wearing the night of his arrest was not available as evidence.

On May 16, 2006, appellant was indicted on one count of burglary and one count of theft. The matter proceeded to a jury trial on August 2, 2006. A nolle prosequi was entered as to the theft count. At the conclusion of the trial, the jury found appellant guilty of burglary. A pre-sentence investigation was ordered, and on August 17, 2006, appellant was sentenced to a seven-year determinate sentence.

*State v. Hillman*, 2008 WL 2058163 (Ohio App. 10th Dist. May 15, 2008). Through counsel

petitioner asserted the following assignments of error on direct appeal:

THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

*See id.* He filed a *pro se* supplemental brief to include the following additional assignments

of error:

> 1. THE APPELLANT CONTENDS THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR (1) TRIAL COUNSEL'S FAILURE TO FILE PRE-TRIAL AND POST-TRIAL MOTION. A MOTION TO SUPPRESS THE OUT OF COURT AND IN COURT IDENTIFICATIONS OF THE ALLEGED VICTIM AND, THE TESTIMONY RESULTING THEREFROM. (2) WHEN COUNSEL ALLOWED AND CONTRIBUTED TO PERJURED TESTIMONY GIVEN BY STATE WITNESSES. (3) FOR FAILING TO MAKE TIMELY OBJECTIONS TO IMPROPER AND MISLEADING STATEMENTS BY THE PROSECUTOR DURING TRIAL AND CLOSING ARGUMENTS. (4) WHEN COUNSEL AIDED IN EXCLUDING EXCULPATORY EVIDENCE FAVORABLE TO APPELLANT FROM BEING PLACED INTO EVIDENCE. (5) FOR NOT REQUESTING THE LESSER-INCLUDED DEGREE OF BURGLARY INSTRUCTIONS BE GIVEN TO THE JURY AFTER THE STATE NOLLE PROSEQUIED THE THEFT ELEMENT. (6) FOR FAILING TO REQUEST AN EYEWITNESS EXPERT ON BEHALF OF THE DEFENSE. (7) FOR NOT FILING AN AFFIDAVIT OF INDIGENCY ON BEHALF OF THE APPELLANT BEFORE THE IMPOSITION OF COURT COST BEING IMPOSED.
>
> 2. THE APPELLANT CONTENDS THAT PROSECUTORIAL MISCONDUCT DENIED HIM OF HIS 5TH, 6TH, 13TH, AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW WHEN (1) THE PROSECUTOR KNOWINGLY USED FALSE MATERIAL EVIDENCE. (2) THE PROSECUTOR KNOWINGLY ALLOWED AND CONTRIBUTED TO PERJURED TESTIMONY BY STATE WITNESSES. (3) THE PROSECUTOR REPEATEDLY MADE IMPROPER AND MISLEADING STATEMENTS TO THE JURY DURING TRIAL AND CLOSING ARGUMENTS. (4) THE PROSECUTOR KNOWINGLY CONCEALED FAVORABLE EVIDENCE FROM THE DEFENSE IN ITS DISCOVERY AND FROM THE JURY DELIBERATIONS AND

FAILED TO PRESERVE EXCULPATORY EVIDENCE.

3. THE APPELLANT CONTENDS THAT THIS CONVICTION ON THE CHARGE OF BURGLARY UNDER OHIO'S STATUTE 2911.12(A)(2) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE VIOLATING THE 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO DUE PROCESS.

4. THE APPELLANT CONTENDS THAT THE TRIAL COURT ABUSES ITS DISCRETION AND, COMMITS PLAIN ERROR IN FIVE INSTANCES. (1) WHEN IT RULES AGAINST THE APPELLANT'S CRIM. RULE 29 MOTION AT THE CONCLUSION OF THE STATE'S CASE. (2) WHEN THE TRIAL COURT FAILS TO MAKE AN OFFICIAL RULING ON THE APPELLANT'S OBJECTION TO THE PROSECUTOR AND DEFENSE COUNSEL'S DELIBERATE EXCLUSION OF EXCULPATORY EVIDENCE IN THE FORM OF THE POLICE REPORT. (3) FOR NOT INCLUDING IN ITS * * * INSTRUCTIONS TO THE JURY AFTER THE STATE NOLLIED THE THEFT OFFENSE, WHICH WAS THE ESSENTIAL ELEMENT AND UNDERLINING OFFENSE OF THE BURGLARY. (4) FOR NOT MAKING AN OFFICIAL INQUIRY INTO THE APPELLANT'S ALLEGATIONS THAT DEFENSE COUNSEL AND PROSECUTOR HAD CONSPIRED TO PRODUCE THE WRONGFUL CONVICTION OF THE APPELLANT BY SHARING INFORMATION AND, COVERING UP THE CONSPIRACY. (5) WHEN THE TRIAL COURT ALLOWED THE STATE TO PROCEED TO PROSECUTE APPELLANT EVEN AFTER THE ALLEGED VICTIM FAILED TO MAKE AN IN-COURT IDENTIFICATION IN VIOLATION OF EVIDENCE RULE 901.

5. THE APPELLANT CONTENDS THAT HIS CONVICTION ON THE CHARGE OF BURGLARY UNDER SECTION 2911.12(A)(2) WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE WHICH VIOLATED APPELLANT'S 13TH AND 14TH AMENDMENT RIGHTS UNDER THE OHIO AND U.S. CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW.

6. THE APPELLANT CONTENDS THAT THE STATE OF OHIO LACKED SUBJECT MATTER JURISDICTION TO PLACE APPELLANT ON TRIAL IN VIOLATION OF CONST. AMEND 6, CONSTITUTION ARTICLE 1 § 10 RULE OF CRIM PROC. RULE.

*See id.*

During the pendency of his direct appeal, appellant filed on November 30, 2006, a petition for postconviction relief pursuant to R.C. 2953.21. On August 10, 2007, the trial court denied appellant's postconviction petition. Appellant appealed this denial and brings the following three assignments of error for our review:

ASSIGNMENT OF ERROR NUMBER ONE

THE APPELLANT CONTENDS THAT THE TRIAL COURT'S DISMISSAL OF HIS POST CONVICTION RELIEF MOTION WAS AN ABSOLUTE ABUSE OF DISCRETION AND THUS VIOLATED THE APPELLANT'S 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW, AND WHEN TRIAL COURT DELIBERATELY IGNORE PETITIONER'S ALLEGATIONS AND PROOF THAT THE PROSECUTOR KNOWINGLY USED FALSE EVIDENCE AND TESTIMONY AND DENIES PETITION WITHOUT A COMPLETE TRANSCRIPT.

ASSIGNMENT OF ERROR NUMBER TWO

THE APPELLANT CONTENDS THAT THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT THUS VIOLATING THE APPELLANT'S 1ST AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW AND, THE RIGHTS TO BE HEARD BEFORE AN UNBIAS[ED] COURT.

ASSIGNMENT OF ERROR NUMBER THREE

> THE APPELLANT CONTENDS THAT THE TRIAL COURT
> COMMITTED PLAIN AND PREJUDICIAL ERROR IN NOT
> GRANTING THE APPELLANT'S MOTION FOR DEFAULT
> JUDGMENT UNDER CIVIL RULE 55 THUS VIOLATING THE
> APPELLANT'S 14TH AMENDMENT RIGHTS TO DUE
> PROCESS AND EQUAL PROTECTION OF THE LAW. ....
> AND *ASSIGNMENT OF ERROR NUMBER FOUR* IS
> INCORPORATED INTO ASSIGNMENT OF ERROR NUMBER
> THREE WHICH IS THE APPELLANT CONTENDS THAT
> PROSECUTORIAL MISCONDUCT DENIED HIM HIS 5TH,
> 6TH AND 14TH AMENDMENT RIGHTS UNDER THE
> UNITED STATES CONSTITUTIONS [sic] AND THAT SUCH
> ACTIONS WERE AN INFRINGEMENT OF SUCH NATURE
> THAT THEY WARRANTED POSTCONVICTION RELIEF
> AND WOULD CAUSE THE APPELLANT'S SENTENCE AND
> CONVICTION TO BE VOID OR VOIDABLE.

*Id*. On May 15, 2008, the Court of Appeals affirmed the trial court's judgment. *Id*. Petitioner filed a motion for reconsideration, which motion the appellate court denied. *See Exhibits 14, 15 to Return of Writ*. On October 1, 2008, the Ohio Supreme Court denied petitioner's subsequent appeal. *State v. Hillman*, 119 Ohio St.3d 1475 (2008); *State v. Hillman*, 119 Ohio St.3d 1476 (2008).

On October 20, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Ineffective assistance of trial counsel.
>
> Trial counsel's failure to file pre-trial and post-trial motions, such as a motion to suppress the out-of-court identification of the alleged victim and the testimony resulting therefrom.
>
> When counsel allowed and contributed to perjured testimony by state witnesses.

Failing to make timely objections to improper and misleading statements by the prosecutor during trial and closing arguments.

Counsel aided in excluding exculpatory evidence, not requesting lesser included offense instructions, not requesting a[n] eyewitness expert, not filing affidavits.

2.  Prosecutorial misconduct.

Prosecutor knowingly used false material evidence.

Prosecutor knowingly allowed and contributed to perjured testimony by state witnesses.

Prosecutor repeatedly made improper and misleading statement to the jury during trial and closing arguments.

Prosecutor knowingly concealed favorable evidence from defense during discovery.

Prosecutor failed to preserve exculpatory evidence.

Entered illegal nolle.

3.  Conviction was against the manifest weight of the evidence/no evidence rule.

Nobody ever said I committed the criminal offense, but merely state that I was built like the person the alleged victim claims he "thought he saw." There was no legal evidence presented, no direct evidence presented as even the trial judge state on the records, no corroborating witness and false testimony and documents were provided to the jury to deliberate and the state nolled the second count of the indictment and reinserted [sic].

4.  Abuse of trial court's discretion (no evidence rule).

Ruling against defense Criminal rule 29 motion at conclusion of state case.

Failing to rule on defendant's objection to defense counsel's and prosecution exclusion of the police report.

For not including the lesser degree of burglary instruction after the state nolled the theft offense.

Not making an official inquiry to allegations that prosecutor and defense counsel conspired to produce conviction.

Allowing the state to continue prosecuting after victim failed to make an in court identification.

For allowing defendant to be convicted on a defective indictment.

5.  Appellant states his conviction as defined by O.R.C. Section 2911.12(A)(2) was not supported by the sufficiency of the evidence (no evidence rule)(actual innocence).

6.   The appellant contends that the state of Ohio lacked procedural and subject matter jurisdiction to place appellant on trial and continue trial after a nolle prosequi was entered during the trial, without first seeking re-indictment.   And double jeopardy....

7.  The appellant contends the appellate court denied him due process and equal protection of the law in 4 instances and thus violated his Sixth and 14th Amendment rights 1. By denying appellant new appellate counsel after learning there was a serious personal conflict between attorney and client.... 2. When appellate court denied appellant's motion to strike appellee's brief which falsified the testimony and evidence given at trial, and based its opinion on such false evidence provided by appellee.... 3. When appellant [sic] court ruled against appellant's argument that his conviction was against the manifest weight of evidence.   By failing to detect and disregard the false testimony and evidence.... 4.   Denying appellant's argument that the trial court lacked subject matter and procedural matter jurisdiction and appellant's double jeopardy issues (were not even addressed) by the appellate court (structural error).

8. The appellant contends the trial court's dismissal of his post conviction motion was an abuse of discretion and violated the 14th Amendment when the trial court deliberately ignored petitioner's evidence in support of his claims for relief, and 2 when the trial court violated O.R.C. 2953.21(C) and dismissed the petition without reviewing the entire records....

9. The appellant contends the trial court errored [sic] in not granting him summary judgment and thus violated appellant's rights to due process and equal protection of the law under the 14th Amendment to the U.S. Constitution....

10. The appellant contends that the appellate court denied him due process and equal protection of the law when it refused appellant's application for reconsideration, when the appellate court refused to comply with Appellate Rule 12 and address all the appellant's assignment of errors....

It is the position of the respondent that petitioner's claims are waived or without merit.

## DISCOVERY REQUEST

Petitioner has submitted proposed interrogatories and requests that respondent be required to answer questions attached to his discovery request. Petitioner contends that a response to these questions will establish that he was improperly convicted and is actually innocent. *See Discovery Request*, Doc. No. 12. Respondent opposes petitioner's discovery request. *See* Doc. No. 13.

The discovery processes contained in the Federal Rules of Civil Procedure do not apply across the board in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the

United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *rehearing en banc denied* Nov. 29, 2001.

> The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford*, 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir.1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994).

*Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir.2004). Upon review of the entire record, this Court is not persuaded that petitioner has met this standard here. The interrogatories proposed by petitioner involve issues that already are apparent from the trial transcript,

or the record before this Court.  The record fails to reflect that discovery will assist this

Court in resolving the claims petitioner raises in these proceedings.

Petitioner's request for discovery is therefore **DENIED.**

**PRESUMPTION OF CORRECTNESS**

Petitioner has filed a motion requesting that 28 U.S.C. §2254(d), (e), not apply in

these proceedings because he is actually innocent of the charge and the victim of a

miscarriage of justice and based on the claims in this habeas corpus petition.  Petitioner

additionally contends that the factual determinations of the state appellate court are

unsupported by the record and based on "false evidence."  *Motion in Opposition of the State*

*Being Presumed Correct*, at 6.  Respondent opposes petitioner's motion.  Doc. No. 9.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997).  Under 28 U.S.C. §2254(e)(1), the

state court's factual findings are presumed to be correct:

> In a proceeding instituted by an application for a writ of
> habeas corpus by a person in custody pursuant to the
> judgment of a State court, a determination of a factual issue
> made by a State court shall be presumed to be correct. The
> applicant shall have the burden of rebutting the presumption
> of correctness by clear and convincing evidence.

Additionally, the state court's decision is binding on this Court unless that decision is

contrary to or involves an unreasonable application of clearly established federal law as

determined by the United States Supreme Court.  28 U.S.C. §2254(d) provides:

15

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet his burden of rebutting the presumption of correctness afforded the state court findings of fact. 28 U.S.C. §2254(e). None of petitioner's allegations warrant non-application of 28 U.S.C. §2254(d), (e) in these proceedings. Further, the record fails to reflect that an evidentiary hearing is warranted.

> Evidentiary hearings in federal habeas corpus are intended to ensure that the petitioner has a full and fair opportunity to develop the factual bases of his constitutional claims. But evidentiary hearings are not granted as a matter of course in federal habeas corpus. In determining whether an evidentiary

> hearing should be held, the relevant inquiry is whether a
> hearing would be meaningful in enabling the petitioner to
> advance his claim. *Campbell, supra*, 209 F.3d at 287.

*Braden v. Bagley*, 2009 WL 922363 (S.D. Ohio March 31, 2009). The record fails to indicate

that an evidentiary hearing will be required to resolve any of petitioner's claims.

Therefore, petitioner's request for non-application of the 28 U.S.C. §2254(d), (e), and

request for an evidentiary hearing, Doc. No. 6, is **DENIED**.

## CLAIMS THREE and FIVE

In claims three and five, petitioner asserts that his conviction was against the

manifest weight of the evidence and that the evidence was constitutionally insufficient to

sustain his conviction on burglary. The state appellate court rejected this claim as follows:

> In his assignment of error made through counsel, and his third
> and fifth assignments of error made pro se, appellant
> challenges both the sufficiency and the weight of the evidence
> pertaining to his conviction.
>
> The Supreme Court of Ohio described the role of an appellate
> court presented with a sufficiency-of-the-evidence argument
> in *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the
> syllabus:
>
> An appellate court's function when reviewing the sufficiency
> of the evidence to support a criminal conviction is to examine
> the evidence admitted at trial to determine whether such
> evidence, if believed, would convince the average mind of the
> defendant's guilt beyond a reasonable doubt. The relevant
> inquiry is whether, after viewing the evidence in a light most
> favorable to the prosecution, any rational trier of fact could
> have found the essential elements of the crime proven beyond

a reasonable doubt. ( *Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 484; *Jenks,* supra.

\*\*\*

While this case turns on circumstantial evidence, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin* (1991), 62 Ohio St.3d 118, 124, citing *State v. Nicely* (1988), 39 Ohio St.3d 147, 154-155. " *State v. Ballew* (1996), 76 Ohio St.3d 244, 249, quoting *State v. Lott* (1990), 51 Ohio St.3d 160, 167, quoting *Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11.

Appellant was convicted of burglary in violation of R.C. 2911.12, which provides in relevant part:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured

or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;

(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.

Appellant argues there is no physical evidence linking him to the crime at issue, and this is merely a case of mistaken identity. However, we find, if believed, the testimony and circumstantial evidence presented here supports each element of the offense for which appellant was found guilty beyond a reasonable doubt.

As described above, the testimony established on May 7, 2006, a person gained entry to Mr. Haggerty's residence at 186 E. 16th Avenue. At approximately 2 a.m., Mr. Haggerty heard footsteps in the residence and looked outside to see a man who had no permission to be there leaving the residence through the back door carrying a white bag. Mr. Haggerty called 9-1-1 and watched the suspect as he walked away toward 17th Avenue. When a police officer arrived, Mr. Haggerty went outside and walked with the officer in the direction the suspect

had gone, whereupon they saw a man standing in front of a dumpster. Though Mr. Haggerty testified he lost sight of the suspect for about 20 seconds, Mr. Haggerty stated the person at the dumpster was "absolutely" the person he saw leaving his residence. Mr. Haggerty also identified the items on the ground by appellant as those belonging to him and his roommates.

Sgt. Shinaver testified he was seven or eight blocks away when he received the dispatch to a burglary at 186 E. 16th Avenue. As he approached the scene, he saw an individual, later identified as appellant, matching the description of the suspect standing near a dumpster and carrying a white bag. Upon seeing the officer, appellant threw down the white bag. The contents of the white bag and those wrapped in a green blanket next to appellant were identified by Mr. Haggerty as belonging to him and his roommates.

Based on the evidence and the testimony of the witnesses viewed in a light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of burglary proven beyond a reasonable doubt. Therefore, we cannot conclude there is insufficient evidence to sustain appellant's conviction.

*State v. Hillman, supra*, 2008 WL 2058165.

Petitioner's claim that his convictions are against the manifest weight of the evidence fails to present an issue appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process,

"sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U .S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner does assert that the evidence was constitutionally insufficient to sustain his conviction. Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra,* 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must

view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326). For the reasons discussed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence was constitutionally sufficient to sustain petitioner's conviction.

Petitioner complains that the State failed to produce any direct evidence establishing that he was the perpetrator of the offense. He contends that Haggerty's identification of him was unreliable, that it was dark, Haggerty never saw his face, and lost sight of him for twenty seconds.[3] According to petitioner, the evidence to insufficient to establish his guilt. In particular, there was no corroborating identification to establish that he was the perpetrator. Petitioner argues that the State failed to establish motive and that his innocence is reflected by the fact that he did not run from police. *See Traverse*. He complains that the evidence against him was solely circumstantial. *See id.* Upon review of the record, petitioner's arguments are not well taken.

---

[3] Petitioner's claim that Haggerty's identification was improperly admitted against him is discussed *infra.*

As discussed by the state appellate court, evidence submitted at trial indicates that Derek Haggerty was awake watching television and studying on the night in question at approximately 2:00 a.m., when the burglary occurred. *Transcript,* at 17-21, 23-24. He was wearing his glasses at that time. *Id.,* at 45. He heard footsteps and the back door closing and called 911. *Id.,* at 23-24. He saw a black man leave the house and walk toward the parking lot. *Id.* Police arrived immediately. *Id.,* at 24, 27. He watched the perpetrator walk through the parking lot. *Id.,* at 28. He never saw the man's face, but described the intruder as wearing dark clothing and a white toboggan type ski cap. *Id.,* at 38-39. He identified the light grey cap that petitioner was wearing as what he had seen. *Id.,* at 40. Police apprehended petitioner approximately 100 yards away from the apartment. *Id.,* at 41. Petitioner had the same build as the man Haggerty had seen leaving his house. *Id.,* at 42. Police stopped petitioner, who matched the general description given by Haggerty, i.e., wearing dark clothes, with a light hat and carrying a white bag, at the rear of the apartment complex. *Id.,* at 72, 74. Petitioner was standing between two dumpsters holding a white bag which police watched him throw to the ground with stolen items at his feet. *Id.,* at 78-79.

This Court's task is to determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that petitioner committed the essential elements of the crime charged beyond a reasonable doubt. *Saxton v. Sheets,* 547 F.3d 597, 602 (6th Cir. 2008), quoting *Nash v. Eberlin*, 258 Fed.Appx. 761, 765 (6th Cir.2007). The state

court's decision on this issue was not unreasonable given the strong circumstantial evidence presented at trial. Further,

> [a] conviction may be sustained based upon nothing more than circumstantial evidence. *See United States v. Kelley*, 461 F.3d 817, 825 (6th Cir.2006) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

*Id.* When viewing all of the evidence in the light most favorable to the prosecution, this Court agrees that the evidence in this case was constitutionally sufficient to sustain petitioner's conviction. *See Jackson v. Virginia, supra.*

Claims three and five are without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial due to prosecutorial misconduct. Petitioner asserts that the prosecutor knowingly submitted false material evidence, made improper misleading statements to the jury during trial and closing argument, concealed favorable evidence from the defense, failed to preserve exculpatory evidence, and "entered a[n] illegal nolle." *Petition*, at 7. Specifically, petitioner alleges that the prosecutor failed to preserve evidence and improperly bolstered the State's case by stating that petitioner's wife took his clothes from the Franklin County work house in an attempt to get rid of evidence against him, and that the police improperly testified to an opinion of petitioner's guilt. Additionally, petitioner alleges that the prosecutor knew the victim lied about not being asleep at the time of the burglary in view of the 911 tape and

improperly argued that petitioner had no business being in the area where he was found when petitioner's mother may have lived in that area. Finally, petitioner asserts that the police improperly testified that he observed petitioner throw a white bag containing stolen items to the ground immediately prior to being arrested, and the prosecutor knew petitioner weighed only 149 pounds at time he was arrested, not 180 pounds, and further knowingly allowed perjury testimony by permitting the victim to change his description of petitioner's pants from dark to light. *See Traverse*. The state appellate court rejected petitioner's claim of prosecutorial misconduct as follows:

> In his second assignment of error, appellant alleges prosecutorial misconduct. Specifically, appellant asserts the prosecutor used false evidence, elicited perjured testimony, made improper closing arguments, and concealed favorable evidence.
>
> The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15; *State v. Thompson,* 161 Ohio App .3d 334, 341, 2005-Ohio-2508, at ¶ 30. Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. *Lott,* supra, at 166. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *State v. Bey* (1999), 85 Ohio St.3d 487, 495.
>
> The false evidence according to appellant is the prosecutor's use of a falsely documented weight of appellant. Appellant asserts the prosecutor used a previous arrest sheet of appellant stating appellant's weight was 180 pounds when at the time of his arrest appellant weighed only 149 pounds, and at the time of trial he weighed 189 pounds. In order to meet the test for

prosecutorial misconduct under these circumstances, appellant must show that: (1) the statement was false, (2) the statement was material, and (3) the prosecutor knew it was false. *Columbus v. Joyce* (Nov. 29, 2001), Franklin App. No. 00AP-1486. Even if a prosecutor engaged in such misconduct, an appellate court should not reverse a conviction if the error was harmless. *Id.*

Initially, we note the record contains no evidence that the prosecutor knew the weight of appellant was "false," if in fact it was. Secondly, there was no objection to the above testimony at trial; therefore, appellant has waived all but plain error. *State v. Keenan* (1998), 81 Ohio St.3d 133; *State v. Santiago*, Franklin App. No. 02AP-1094, 2003-Ohio-2877. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *State v. Moreland* (1990), 50 Ohio St.3d 58. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, syllabus paragraph three. Given the evidence in the record establishing appellant was arrested in close proximity to the scene with the victim's property, and the victim positively identified appellant, we cannot find an instance of plain error, such that the outcome of the trial would have been different without the alleged error.

Appellant also asserts the prosecutor elicited false testimony because the witnesses gave inconsistent testimony regarding the color of pants appellant was wearing the night of his arrest. To the extent it can be said any of the witnesses gave inconsistent testimony in this matter, there is nothing in the record to suggest it was the result of the prosecutor's actions. As discussed previously, the determination of weight and credibility of the evidence is for the trier of fact. *DeHass, supra*. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *Williams, supra*. The trier of fact is free to believe or disbelieve all or any of the testimony. *Jackson, supra*.

Appellant next asserts the prosecutor made inappropriate comments during closing arguments. In general, prosecutors are given considerable latitude in opening statement and closing argument. *Ballew, supra,* at 255. In closing argument, a prosecutor may freely comment on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " *Lott,* supra, at 165, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82. Appellant did not object during the prosecutor's closing argument. The failure to object to alleged prosecutorial misconduct waives all but plain error. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 126; *State v. Loch,* Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43. After reviewing the transcripts, we find the prosecutor was summarizing the evidence as was adduced at trial, and we find no evidence of prosecutorial misconduct here.

Lastly, appellant asserts the prosecutor withheld exculpatory evidence; namely, the police report made the night of appellant's arrest. To the extent this can be construed as an alleged violation of *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, appellant must establish: (1) the prosecutor suppressed information; (2) the information was favorable to the defense; and (3) the information was material. The record is barren that any such evidence was kept from him. The police report used to refresh the officer's recollection at trial was available to the defendant, and his counsel cross-examined the officer about the report, wherein she elicited the fact that the testifying officer did not write the report. Moreover, there is no evidence the police report contained anything favorable to appellant as his counsel stated "the things that were written in that report are not helpful to Mr. Hillman." (Tr. at 125.)

*State v. Hillman, supra.* Again, the factual findings of the state appellate court are presumed to be correct, 28 U.S.C. §2254(e), and habeas relief is not warranted unless that decision was contrary to, or involved an unreasonable application of clearly established federal law or resulted in a decision that was based upon an unreasonable determination of the facts in

light of the evidence presented. 28 U.S.C. §2254(d). Petitioner has failed to meet this standard here.

The Court notes that the state appellate court reviewed portions of petitioner's claim of prosecutorial misconduct for plain error only, due to his failure to object. Therefore, while these claims may be procedurally defaulted, *see Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001), since respondent has failed to raise this affirmative defense of procedural default, this Court will review petitioner's claims on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Gray v. Netherland*, 518 U.S. 152, 166 (1996).

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnell v. De Christoforo*, 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness. *Id.* at 642-43; *Martin v. Foltz,* 773 F.2d 711, 716-17 (6th Cir.1985); *Angel v. Overberg,* 682 F.2d 605, 607 (6th Cir.1982)( *en banc* ). This determination is made by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg*, 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case against the accused. Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz,* 773 F.2d at 716 (citations omitted)(quoting *Cook v. Bordenkircher,* 602 F.2d 117, 120 (6th Cir.1979). Additionally,

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland, supra,* 373 U.S. at 86. Evidence is material

> If there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*United States v. Bagley,* 473 U.S. 667, 682 (1985).

> [T]here is never a real " *Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene,* 527 U.S. 263, 281 (1999). "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *O'Guinn v. Dutton,* 88 F.3d 1409, 1418 (6th Cir.1996), citing *United States v. Bagley, supra.* "In the absence of prejudice, even assuming a violation of *Brady,* reversal is not required." *United States v. Jones,* 766 F.2d 994, 998 n. 1 (6th Cir.1985), citing *United States v. Campagnuolo,* 592 F.2d 852, 861 & n. 9 (5th Cir.1979). Further,

> [T]he government's failure to disclose potentially exculpatory information does not violate *Brady* "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information' or where the evidence is available to defendant from another source." *United States v. Clark,* 928

> F.2d 733, 738 (6th Cir.1991) (quoting *United States v. Grossman,* 843 F.2d 78, 85 (2d Cir.1988)). *See also Todd,* 920 F.2d at 405.

*United States v. Cottage,* 307 F.3d 494, 499 (6th Cir.2002).

The record fails to support petitioner's claim of prosecutorial misconduct. This Court is unable to locate in the trial transcript any improper comments by the prosecutor or police. Police attempted to obtain the clothes petitioner was wearing at the time of his arrest, but by the time they did so, his clothes had been exchanged pursuant to jail policy by a relative for clothes that petitioner needed to wear to court. *Trial Transcript* at 102, 110-112. Only the stocking cap that petitioner had been wearing at the time he was arrested remained at the jail, and it was introduced into evidence. *Id.,* at 102. Police confirmed that petitioner did not live in the area where the burglary occurred, but resided on the east side of Columbus. *Id.,* at 97-98. Sergeant Shinaver did not know petitioner's weight or height on the date of his arrest but said petitioner was taller than 6 feet and lighter than 225 pounds. Sergeant Shinaver had documented on his arrest report that petitioner was 6 feet one inch and weighed 180 pounds. On cross examination, he acknowledged that he did not verify petitioner's height and weight at that time. *Id.,* at 89-90. However, police photographed petitioner on the date of his arrest, and these photographs were admitted into evidence. *Id.,* at 96-97. Nothing about the foregoing was improper. Further, defense counsel cross examined the witnesses on the issues of inconsistencies between petitioner's description and what he was wearing at the time of his arrest, police failure to preserve the

clothes for trial, the lack of any fingerprint evidence, police failure to search the area for other suspects, the fact that petitioner did not run from police, that Haggerty lived in an area off campus which many people frequented, and about the fact that late night parties were not unusual there. Counsel also argued that petitioner was at the wrong place at the wrong time and there was insufficient evidence connecting him to the crime. *See Transcripts.* The 911 tape was played for the jury. *Id.*, at 25-26.

Petitioner's allegation that the prosecutor falsified the police report or failed to disclose contents of the police report is plainly without merit and without record support. Sergeant Shinaver testified that petitioner was wearing light colored pants when he was arrested. *Id.*, at 76. Haggerty, however, told the 911 operator and police that petitioner was wearing dark clothing, a white hat and was carrying a white bag. *Id.*, at 28-29, 40, 50. Haggerty's failure to tell the 911 operator that petitioner was wearing light colored pants only assisted the defense argument that police arrested the wrong man, in view of Shinaver's testimony that petitioner was wearing light colored pants. As discussed by the state appellate court, defense counsel stated that nothing in petitioner's arrest report was helpful to him. *Id.*, at 125.[4] The police

---

[4] Prior to closing argument, petitioner requested to address the trial court, and the following exchange occurred:

> DEFENDANT: I believe that the police officer has committed perjury. I believe that the prosecutor has committed misconduct, and –
>
> COURT: ... In what sense?

DEFENDANT: Okay. After my wife brought my clothes out, right, and we knew that, well, I knew that they had no way of knowing what color clothing I had on that day, you know, you understand what I am saying? The clothing had been switched out, and I told my attorney that I had on light colored blue jeans...

I told my attorney... I had on light pants and she took that information obviously to the prosecutor and the prosecutor took that information to the police and now the police testified to that, testified that I had on light pants and it had to come from her. And... the 911 caller said that the suspect had on all black clothing, and you know, it just does not make sense he comes in here testifying that when he stopped me I had on all black clothing... it just does not make sense he comes in here testifying that when he stopped me I had on light pants when the 911 caller said I had on black pants. And you know what, I told my attorney that I had on light colored pants. And we're at a situation where... he comes in here and he was allowed to testify that I had a white bag but yesterday it was not in the police report and neither did the prosecutor or my attorney put that into evidence, and you know, I just wanted to put that on the record... based on the facts that the police are simply lying.

COURT: Whether or not a person is telling the truth is a matter for the jury to make a decision, and that's called credibility, and I will instruct the jury on credibility of a witnesses' testimony, but that is something for consideration for the jury to make as to whether or not the person is telling the truth or may be fabricating the facts, that's the reason we have a jury.

DEFENDANT: That's right, and to have the prosecutor have misconduct to allow this man to testify to something he knew was a lie.

***

[DEFENSE COUNSEL]: Just for the record... I absolutely

report indicates in relevant part:

> Dispatched to investigate a report of a burglary in progress. Victim stated he was sleeping in his bedroom when he heard someone walking around in the house. Victim stated he thought it was one of his roommates so he went to talk to him, but instead he saw arrestee exiting the house through the rear door. Arrestee was carrying two bags. Officers located arrestee in the rear of 198 E. 16th Ave. Arrestee had listed property in the bags which belonged to the victims. Burglary responded and processed the scene. Victim did not know the arrestee. Victim assumed arrestee entered the residence through a front window which was already broken. Victim made a positive identification at scene.

*Exhibit 3 to Petitioner's Motion to Strike Respondent's Response*, Doc. No. 17. Although the report does not indicate that the officer saw petitioner drop a white bag to the ground, the report appears to have been written by Officer Smith, who did not testify at trial. Further, the fact that the Officer Smith indicated in his police report that Haggerty said he had been sleeping, and Haggerty testified at trial that he had been studying for the LSAT exam and watching television at the time he heard someone enter his home, *see Trial Transcript*, at 21, 23-24, does not indicate that the prosecutor knowingly presented false testimony such that

---

> deny in any shape or form that I shared any information whatsoever with the prosecutor as to the police reporting question.
>
> Your Honor, there has not been any information shared... and... the police report has not been entered into evidence.... And ... the things that were written in that report are not helpful to Mr. Hillman. And that is one of the reasons why I did not want to have that come into evidence.

*Trial Transcript,* at 123-126.

habeas corpus relief is warranted:

> The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998). However, a habeas petitioner must show that a witness' statement was "indisputably false", rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d at 517-518. A habeas petitioner has the burden of establishing a *Giglio* violation. *See Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir.1999).

*Malcum v. Burt*, 276 F.Supp.2d 664, 684 (E.D. Michigan July 30, 2003). Petitioner has failed to meet this standard here. Finally, petitioner similarly cannot establish any prejudice from the prosecutor's decision to dismiss the theft charge prior to jury deliberations.

In short, upon review of the entire record, this Court concludes that petitioner has failed to establish either that the prosecutor acted improperly or that petitioner was prejudiced by any of the alleged improper conduct such that habeas corpus relief is warranted. *See Martin v. Foltz, supra.*

Claim two is without merit.

## CLAIM FOUR

In claim four, petitioner asserts that the trial court abused its discretion by denying his motion under Criminal Rule 29 at the conclusion of the State's case; failing to rule on petitioner's objection to exclusion of the police report; failing to issue lesser included jury instructions on burglary; failing to make inquiry into allegations that the prosecutor and defense counsel conspired to obtain his conviction; allowing the State to continue prosecution after the victim failed to make an in court identification of petitioner; and for allowing petitioner to be convicted on a defective indictment. The state appellate court rejected these claims as follows:

> [A]ppellant suggests the trial court abused its discretion and committed plain error when it denied his Crim.R. 29 motion made at the conclusion of the prosecution's case. "The standard of review applied to a denied motion for acquittal pursuant to Crim.R. 29 is virtually identical to that employed in a challenge to the sufficiency of the evidence." *State v. Turner*, Franklin App. No. 04AP-364, 2004-Ohio-6609, at ¶ 8, appeal not allowed 106 Ohio St.3d 1547, 2005-Ohio-5343, citing *State v. Ready* (2001), 143 Ohio App.3d 748, 759. We have already determined there was sufficient evidence to support appellant's conviction; therefore, we find no merit to this argument.

> Appellant next contends the trial court erred in not ruling on his objection to exclude the police report. According to appellant, Sgt. Shinaver testified that he saw appellant throw a white bag, and that appellant was wearing "light" pants when arrested, but neither of these statements appear in the police report. With respect to admissibility of police reports, it is well-established that police reports are generally inadmissible hearsay, unless offered by the defendant, unless the source of information or other circumstances indicate lack of trustworthiness. Evid.R. 803; *State v. Williams*, Trumbull

App. No.2005-T-0123, 2006-Ohio-6689, citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235. Appellant did not offer the police report into evidence, and there is no evidence of a "lack of trustworthiness" in the matter before us, therefore, there is nothing to suggest the police report would be admissible in the matter herein. Further, when appellant raised this issue to the trial court, i.e., that the police officer gave false testimony and that his counsel shared confidential exculpatory information with the prosecutor, his counsel stated:

Thank you. Just for the record I deny, and I want to state for the record that I absolutely deny in any shape or form that I shared any information whatsoever with the prosecutor as to the police reporting question.

Your Honor, there has not been any information shared and your Honor, the police report has not been entered into evidence, that's number one. And also the police officer who actually wrote that report was not here, and the things that were written in that report are not helpful to Mr. Hillman. And that is one of the reasons why I did not want to have that come into evidence.

(Tr. at 125.)

Appellant next argues the trial court erred in not instructing the jury on a "lesser degree of burglary under 2911.12(A)(4) after the trial court illegally allowed the prosecutor to nolle prosequi the theft offense just prior to jury deliberations ." (Nov. 27, 2007 Brief at 24.) Such instruction was not requested at trial, and, therefore, appellant has waived all but plain error. *State v. Dennis*, Franklin App. No. 04AP-595, 2005-Ohio1530.

An instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *Id.,* at ¶ 15, citing *State v. Thomas* (1988), 40 Ohio St.3d 213, paragraph two of the

syllabus. As we discussed in our disposition of appellant's previous assignments of error, appellant was convicted of burglary under R.C. 2911.12(A)(2), and we have determined there was sufficient evidence to support this conviction and that this conviction is not against the manifest weight of the evidence. Therefore, we find no merit to appellant's argument that he was entitled to an instruction on a lesser-included offense.

Appellant next contends the trial court did not inquire into his allegation that his trial counsel and the prosecutor "had conspired by sharing information and allowing state witnesses to commit perjury." (Nov. 27, 2007 Brief at 25.) However, we find the transcript clearly refutes appellant's position. In addition to appellant's counsel's comments cited above, the prosecutor stated:

Your Honor, I take offense to that. The bottom line here is Sgt. Shinaver testified to his clothing and said that his pants were lighter in color, not light gray pants or anything like that. He just was making a color contrast statements, but all of this is an issue for the jury to decide.

(Tr. at 124.)

Additionally, the trial court stated:

All right, the court had the benefit of Mr. Hillman's statement, and we are now ready to proceed with closing arguments; and also the court wants to put on the record that I have found no prosecutorial misconduct, and the court further finds that [appellant's counsel] is to continue to represent Mr. Hillman, and that [appellant's counsel] has conducted herself most professionally and effectively and has continued to do that throughout this trial, and we are now ready to begin with closing arguments.

*Id.* at 126.

\*\*\*

For the foregoing reasons, we overrule appellant's fourth assignment of error.

\*\*\*

[A]ppellant contends the trial court lacked subject matter jurisdiction based on a defective indictment. It is well-established that a common pleas court has original jurisdiction in felony cases and its jurisdiction is invoked by the return of an indictment. *Click v. Eckle* (1962), 174 Ohio St. 88, 89. Further, as argued by appellee, an indictment is proper pursuant to Crim.R. 7(B) when it is signed and contains a statement that the defendant has committed a public offense specified in the indictment. In this case, count one of the indictment contained the crime charged under R.C. 2911.12, set forth the requisite statutory language, and clearly put appellant on notice of the crime of which he was charged. Contrary to appellant's assertions, the indictment was not amended. Rather, a nolle prosequi was entered pertaining to the theft charge contained in count two of the indictment. Upon review, we find the indictment in the matter before us was not defective, and, therefore, overrule appellant's sixth assignment of error.

*State v. Hillman, supra.*

Petitioner's claim that the trial court improperly denied his motion for judgment of acquittal pursuant to Ohio Criminal Rule 29 presents an issue of state law that is not appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas corpus petition only on the grounds that the challenged confinement is

in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a).

A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here. To the extent that petitioner again asserts that the evidence was constitutionally insufficient to sustain his convictions, such claim has already been addressed, *supra*.

Further, and contrary to petitioner's allegations here, the record simply fails to support his assertion that the trial court acted impartially or improperly refused to dismiss the case based upon a lack of evidence, or that the court failed to inquire into petitioner's allegations that defense counsel had shared information with the prosecutor. The state appellate court accurately summarized the transcript of the discussion regarding the police report at trial. The record fails to reflect any error of federal constitutional magnitude.

Before a federal habeas court may overturn a conviction based on improper jury instructions, the Court must find not only that the instructions were erroneous, but also that, taken as a whole, the instructions were so infirm that they rendered the entire trial

fundamentally unfair.[5]  *Austin v. Bell,* 126 F.3d 843, 846 (6th Cir.1986), citing *Estelle v.*

*McGuire,* 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *Wood v.*

*Marshall,* 790 F.2d 548, 551-52 (6th Cir.1986).  Even if a challenged portion of the jury

instructions is improper, that fact does not necessarily render the jury instructions

improper as a whole. *Cupp v. Naughten,* 414 U.S. 141 (1973).  "The petitioner must show

more than that the instructions are undesirable, erroneous, or universally condemned."

*Wood v. Marshall, supra,* 790 F.2d at 551, citing *Henderson v. Kibbe,* 431 U.S. at 154. Further,

the fact that a jury instruction may have been incorrect under state law does not alone

render the instruction constitutionally invalid. *Estelle v. McGuire, supra,* 502 U.S. at 482,

citing *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6 (1983)).  Where the evidence introduced

at trial does not support a conviction on the requested lesser included offense, failure to

properly instruct on the lesser included offense does not violate the defendant's due

process rights. *Ferrazza v. Mintzes,* 735 F.2d 967, 968 (6th Cir.1984), citing *Hopper v. Evans,* 456

U.S. 605, 612 (1982) and *Beck v. Alabama,* 447 U.S. 625, 637 (1980).

> *Beck* has never stood for the proposition that the Constitution
> mandates a jury-mediated plea bargain on a lesser charge,
> despite overwhelming evidence in support of the greater

---

[5]  Petitioner's claim that he was denied a fair trial due to the trial court's failure to
issue lesser included jury instructions on burglary appears to be waived, because
petitioner failed to request the lesser included jury instruction, and the state appellate
court therefore reviewed this claim for plain error only.  *See Seymour v. Walker* 224 F.3d
542, 557 (6th Cir. 2000).  Again, however, it does not appear that respondent raised this
affirmative defense.  *See Return of Writ.*  Therefore, this Court will consider the merits of
petitioner's claim.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Gray v. Netherland*, 518 U.S.
152, 166 (1996).

offense. Rather, the purpose of the rule is to facilitate accurate factfinding by the jury. A lesser-included offense instruction is therefore not required when the evidence does not support it ... This court has further held that, because *Beck* was a challenge based on the Eighth Amendment, the Constitution does not require a lesser-included offense instruction in non-capital cases. *See Bagby v. Sowders,* 894 F.2d 792, 795-97 (6th Cir.1990) (en banc).

*Campbell v. Coyle,* 260 F.3d 531, 544 (6th Cir.2001).

O.R.C. §2911.12 provides:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;

(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the

offender is present or likely to be present.

(B) As used in this section, "occupied structure" has the same meaning as in section 2909.01 of the Revised Code.

(C) Whoever violates this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree. A violation of division (A)(4) of this section is a felony of the fourth degree.

Petitioner appears to argue that he was entitled to a jury instruction on a lesser included offense of burglary because the prosecutor dismissed the theft charge against him. However, in view of the evidence presented, the Constitution did not mandate such instruction.

Claim four is without merit.

## CLAIM SEVEN

In claim seven, petitioner asserts that the state appellate court improperly refused to appoint new appellate counsel on his behalf based upon a conflict of interest; denied his motion to strike the appellee's brief for falsifying trial testimony and based its decision on "false evidence," rejecting his claim that his conviction was against the manifest weight of the evidence; denied his claims that the trial court lacked jurisdiction; and failed to address Double Jeopardy issues raised by petitioner on direct appeal.

Petitioner states that he filed "countless complaints" against appellate counsel with the Court of Appeals from November 30, 2006, to June 19, 2007, which were improperly denied by the state appellate court. He complains that appellate counsel submitted a

"meaningless merit brief" containing misstatements of facts. Petitioner complains that the state appellate court refused to appoint him new counsel despite his complaints and asserts that he thereby effectively was denied the effective assistance of counsel on appeal. *Traverse*, at 45-46. Petitioner further asserts that he was denied due process because the state appellate court denied his motion to strike appellate counsel's appellate brief. *Id.*, at 46.

Petitioner raised these same issues in his appeal to the Ohio Supreme Court. *See Exhibit 7 to Return of Writ.* Respondent correctly notes that petitioner's claim that the state appellate court improperly denied his request to strike the brief filed by his appointed appellate counsel fails to raise a claim of federal constitutional dimension, except to the extent that such issue relates to petitioner's claim that he was denied the right to counsel of his choice, "conflict free" counsel, or forced to proceed *pro se* on direct appeal. This Court liberally construes petitioner's *pro se* habeas corpus petition to raise such federal constitutional issue(s). *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)(pleadings of *pro se* prisoners are liberally construed). The Court will not again address here, however, petitioner's argument that his conviction was against the manifest weight of the evidence, or that the evidence was constitutionally insufficient to sustain his conviction.

Petitioner asserts that his burglary conviction violated the Double Jeopardy Clause because the prosecutor *nolle prosequied* the theft charge against him before the jury retired to deliberate, rather than prior to seeking an indictment on both charges, and because theft

was a lesser included offense of burglary. *See Exhibit 5 to Return of Writ; Traverse*, at 48. For the same reason, he contends that the indictment was defective under Ohio law. *See id.* Additionally, petitioner requests the Court to take judicial notice that the trial court acted without legal jurisdiction in convicting and sentencing him under these circumstances. See Doc. No. 22.

Respondent contends that petitioner has waived his double jeopardy claim for federal habeas corpus review by failing to present such claim to the state appellate court. Upon review of the record, this Court does not agree. Petitioner plainly referred to the Double Jeopardy Clause in his assignments of error, as well as throughout his appellate brief, and additionally referred to at least one state court case which relied on federal law in this regard. *See Exhibit 5 to Return of Writ*. That said, petitioner's claim is plainly without merit.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)(requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to

deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.[6]

However, the Supreme Court overruled the "same conduct" rule of *Grady*, concluding that *Grady* was inconsistent with Supreme Court precedent and the common law understanding of double jeopardy. *United States v. Dixon*, 509 U.S. 688, 704 (1993). In addition, a defendant cannot be prosecuted for a greater offense after conviction or acquittal of the lesser included offense. *Brown v. Ohio, supra.* In *Brown,* the defendant was convicted on his guilty plea to the offense of joyriding and was subsequently convicted of the offense of auto theft. Both convictions were based on the same events. Under Ohio law, joyriding is a lesser included offense of auto theft. The Supreme Court, noting that conviction on a charge of joyriding required no proof not required for conviction on a charge of auto theft, held that the subsequent prosecution of the greater charge was precluded by double jeopardy principles. 432 U.S. at 168-69. The Supreme Court

---

[6] In *Grady v. Corbin*, 499 U.S. 508, 519 (1990), decided after *Blockburger*, the United States Supreme Court held that the Double Jeopardy Clause also barred prosecution of multiple offenses where the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

emphasized that the prohibition of successive prosecutions serves a policy of finality, protecting a defendant from a government's attempts to re-litigate facts or secure additional penalties. *Id.*, at 165-66.

Again, petitioner's claim regarding an alleged violation of state law fails to present an issue appropriate for federal habeas corpus review. See 28 U.S.C. §2254(a); *Pulley v. Harris, supra; Smith v. Sowders; supra.* Further, the prosecutor's dismissal of the theft underlying petitioner's burglary conviction did not violate the Double Jeopardy Clause since petitioner was not subject to prosecution on the greater offense after acquittal of the lesser included offense, *see Brown v. Ohio, supra*, nor did his conviction thereby violate *Blockburger.* Petitioner's request for judicial notice, Doc. No. 22, therefore also is **DENIED**.

Petitioner's claim that he was denied counsel of his choice on direct appeal, conflict free counsel, or that he was forced to proceed *pro se* also lacks merit. On December 5, 2006, petitioner filed a motion to dismiss his appellate counsel and requested that new counsel be appointed on his behalf. *Exhibit 18 to Return of Writ.* He complained that his attorney had refused to respond or consult with him, and had not filed the appeal. *See id.* On January 16, 2007, the appellate court granted counsel's motion for delayed appeal, and denied petitioner's motion to dismiss and replace appellate counsel in relevant part as follows:

> Appellant's counsel was notified in late September 2006 that he was appointed as appellate counsel. When checking for the sentencing entry in September and October, counsel was informed by the county clerk's office that the case was still active. However, the corrected sentencing entry had actually

been filed on October 10, 2006d. After counsel obtained the sentencing entry, he filed the motion for delayed appeal. We find that appellant has shown a reasonable explanation for the failure to perfect a timely appeal.

\*\*\*

Appellant's pro se motion to dismiss and replace appellate counsel is based on an alleged lack of communication and the failure to file a notice of appeal. Based on the explanations set forth in the motion for delayed appeal discussed above, we do not find appellant's motion to dismiss counsel to be well-taken.

*Exhibit 19 to Return of Writ.* On April 11, 2007, the appellate court issued a Journal Entry indicating:

A ruling on appellant's pro se April 6, 2007 motion to dismiss court-appointed counsel is deferred. Appellant is hereby notified that if counsel is dismissed, substitute counsel will not be appointed to represent appellant and appellant will be required to file a brief on his own behalf. If appellant desires this court to dismiss counsel, he shall notify the court of his desire not later than April 20, 2007.

*Exhibit 20 to Return of Writ.* On June 5, 2007, appellate counsel filed petitioner's appellate brief. *Exhibit 4 to Return of Writ.* Thereafter, on June 15, 2007, petitioner wrote a letter to the Administrative Judge requesting that he be appointed new appellate counsel. He complained that his attorney had "repeatedly ignored" his letters requesting information regarding his appeal, and complained regarding the appellate court's prior rulings on his requests for the appointment of new counsel. *Exhibit 21 to Return of Writ.* Petitioner stated, "I do not trust this attorney, I do not like this attorney, and... there has always been such a conflict between us that it's impossible for me to have any degree of confidence in him."

*Id.* On June 14, 2007, the appellate court issued a Journal Entry indicating:

> Appellant's pro se June 5, 2007 letter to Administrative Judge Judith French, construed as a motion to remove counsel, is denied. Appellant is granted leave to file a supplemental brief to the extent said brief is filed not later than June 29, 2007. Appellee may respond to appellant's supplemental brief in accordance with the general rules regarding response briefs.

*Exhibit 22 to Return of Writ.* On June 19, 2007, petitioner filed a motion to dismiss appellate counsel, strike counsel's brief, appoint new counsel, or allow appellant to proceed *pro se,* and requested the appellate court to order counsel to turn over a copy of the trial transcript.

*Exhibit 23 to Return of Writ.* Petitioner complained that appellate counsel had misstated facts and filed a "meaningless" appellate brief. *See id.* In a Journal Entry dated June 20, 2007, the appellate court granted petitioner's motion to dismiss court-appointed counsel, denied his request for new counsel, denied his motion to strike counsel's brief, granted his motion to proceed *pro se*, and ordered counsel to mail the transcripts to petitioner. Petitioner was granted an extension of time until July 20, 2007, to file an appellate brief.

*Exhibit 24 to Return of Writ.* As discussed, *supra*, the appellate court then considered on appeal all of the claims raised by appellate counsel, as well as the claims raised by petitioner in his *pro se* supplemental appellate brief. *See State v. Hillman, supra.*

In *Martinez v. Court of Appeal of California, Fourth Appellate District*, 528 U.S. 152, 154 (2000), the United States Supreme Court declined to extend *Faretta v. California*, 422 U..S. 806 (1975)(holding that a criminal defendant has a right to represent himself at trial) to appellate proceedings, and held that California did not act in constitutionally prohibited

manner by requiring an indigent criminal defendant in appellate proceedings to accept

against his will a state appointed attorney. *Id.*, 163-164. The Supreme Court stated:

> In light of our conclusion that the Sixth Amendment does not apply to appellate proceedings, any individual right to self-representation on appeal based on autonomy principles must be grounded in the Due Process Clause. Under the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding. We have no doubt that instances of disloyal representation are rare. In both trials and appeals there are, without question, cases in which counsel's performance is ineffective. Even in those cases, however, it is reasonable to assume that counsel's performance is more effective than what the unskilled appellant could have provided for himself.

> ***

> As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must " 'voluntarily and intelligently' " elect to conduct his own defense, 422 U.S., at 835, 95 S.Ct. 2525 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation." 422 U.S., at 835, 95 S.Ct. 2525. A trial judge may also terminate self-representation or appoint "standby counsel"-even over the defendant's objection-if necessary. *Id.*, at 834, n. 46, 95 S.Ct. 2525. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the " appearance before the jury" that the defendant is representing himself. *McKaskle v. Wiggins,* 465 U.S. 168, 187, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for

the defendant that counsel would normally carry out. *Id.*, at 183-184, 104 S.Ct. 944. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

In the appellate context, the balance between the two competing interests surely tips in favor of the State. The status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict. We have recognized this shifting focus and noted:

"[T]here are significant differences between the trial and appellate stages of a criminal proceeding. The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt...."

"By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or a jury below." *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

In the words of the *Faretta* majority, appellate proceedings are simply not a case of "hal[ing] a person into its criminal courts." 422 U.S., at 807, 95 S.Ct. 2525.

The requirement of representation by trained counsel implies no disrespect for the individual inasmuch as it tends to benefit the appellant as well as the court. Courts, of course, may still exercise their discretion to allow a lay person to proceed *pro se.* We already leave to the appellate courts' discretion, keeping "the best interests of both the prisoner and the government in mind," the decision whether to allow a *pro se* appellant to participate in, or even to be present at, oral argument. *Price v. Johnston*, 334 U.S. 266, 284, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). Considering the change in position from defendant to appellant, the autonomy interests that survive a felony conviction are less compelling than those motivating the

decision in *Faretta*. Yet the overriding state interest in the fair and efficient administration of justice remains as strong as at the trial level. Thus, the States are clearly within their discretion to conclude that the government's interests outweigh an invasion of the appellant's interest in self-representation.

For the foregoing reasons, we conclude that neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction.

*Id.*, at 161-163 (footnote omitted).

Therefore, the Ohio Appellate Court's refusal to strike appellate counsel's brief from the record was not contrary to, or an unreasonable application of clearly established federal law under 28 U.S.C. §2254(d)(1).  *See, e.g., James v. Brigano*, 470 F.3d 636, 642-643 (6th Cir. 2006).  Further, the appellate court was not constitutionally required to permit petitioner, as it did, to file a supplemental *pro se* appellate brief, in which he was allowed the opportunity to raise any additional claims and arguments that appellate counsel omitted.

There is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. See *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir.2000). By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir.1996); *See also Henderson v. Collins,* 101 F.Supp.2d 866, 881 (S.D. Ohio 1999); aff'd in part, vacated in part on other grds 262 F.3d 615 (6th Cir.2001) (defendant who was represented by counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation).

*Dowdy v. Sherry*, 2008 WL 5188827 (E.D. Michigan December 10, 2008).

Therefore, claim seven is without merit.

## CLAIMS EIGHT and NINE

In claim eight, petitioner asserts that the trial court improperly denied his petition for post conviction relief. This claim fails to present an issue appropriate for federal habeas corpus relief. *See Kirby v. Dutton*, 794 F.2d 245, 246-247 (6th Cir. 1986).

## CLAIM TEN

In claim ten, petitioner asserts that the state appellate court violated state appellate rules when it denied his motion for reconsideration. This claim presents an issue regarding the alleged violation of state law, which is not appropriate for federal habeas corpus review. *See* 28 U.S.C. 2254(a); *Pulley v. Harris, supra; Smith v. Sowders, supra.*

## CLAIM ONE

In claim one, petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to file pre-trial motions to suppress evidence, "contributed to perjured testimony by state witnesses," failed to object to improper statements by the prosecutor, failed to file affidavits, failed to request a lesser offense jury instruction, failed to obtain an expert on eyewitness identification, and "aided in excluding exculpatory evidence." *See Petition*.

The state appellate court rejected petitioner's claim of ineffective assistance of trial counsel as follows:

> [A]ppellant contends he was denied effective assistance of trial counsel as guaranteed by the United States and Ohio Constitutions. "The benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. *Id.* at 687. The defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 698.

According to *Strickland:*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, quoting *Michel v. Louisiana* (1955), 350 U.S.

91, 101, 76 S.Ct. 158. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. *State v. Hester* (1976), 45 Ohio St.2d 71, 75.

Appellant contends his counsel was ineffective for: (1) failing to file a motion to suppress; (2) allowing and contributing to perjured testimony; (3) failing to object during trial and closing arguments; (4) aiding in excluding exculpatory evidence from trial; (5) not requesting a lesser-included degree of burglary; and (6) failing to request an eyewitness expert.

In his first assignment of error, appellant asserts his counsel was ineffective for failing to file a motion to suppress the victim's identification of him. It is appellant's position the identification should have been suppressed because it was made at the "highly suggestive show-up" and the victim's identification of appellant was unreliable. The " '[f]ailure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted.' " *State v. Shipley,* Franklin App. No. 05AP-385, 2006-Ohio-950, at ¶ 15, quoting *State v. Randall,* Franklin App. No. 03AP-352, 2003-Ohio-6111, at ¶ 15. Trial counsel is not required to file futile motions. See *State v. McDonall* (Dec. 16, 1999), Cuyahoga App. No. 75245.

A "show-up" is inherently suggestive. See, e.g., *Ohio v. Barnett* (1990), 67 Ohio App.3d 760. However, the "admission of evidence of a showup without more does not violate due process." *Neil v. Biggers* (1972), 409 U.S. 188, 198, 93 S.Ct. 375. A defendant is entitled to the suppression of eyewitness identification of the defendant at a show-up only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Id.; Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967; *State v. Madison* (1980), 64 Ohio St.2d 322, 331; *State v. Butler* (1994), 97 Ohio App.3d 322, 325, appeal dismissed (1995), 71 Ohio St.3d 1464. The factors to consider when "evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, at 199.

Here, Mr. Haggerty testified he viewed a man exit the house with a white bag in his hands. Mr. Haggerty described the individual as a black male wearing dark clothing and a white hat. Mr. Haggerty watched the man exit the back of the house and walk toward 17th Avenue. Mr. Haggerty stated he lost sight of the person for approximately 20 seconds until he and a police officer turned a corner and saw the individual standing in front of a dumpster. Mr. Haggerty testified appellant was absolutely the man he saw leaving his residence with the white bag. Further, items from Mr. Haggerty's house were found on the ground by appellant, some contained in a white bag, others wrapped in a dark colored blanket.

Given the victim's opportunity to view appellant as he was exiting the residence, the victim's description of appellant, the very short time between the commission of the crime and the victim's identification of appellant, we cannot say that the show-up identification procedure created a substantial likelihood of misidentification such that a defense counsel's motion to suppress the victim's identification of appellant at the scene would have been granted.

Appellant next claims his counsel permitted the prosecutor to present perjured testimony. This allegation, as discussed under appellant's prior assignments of error, stems from Sgt. Shinaver's testimony. We have already found no evidence in the record to support appellant's blanket assertion regarding perjured testimony. To the extent appellant asserts Sgt. Shinaver's testimony was inconsistent, such is a matter within the purview of the jury's determination.

Appellant also contends his counsel was ineffective because she tried to bully him into taking a plea and she did not prepare for trial. The record, including the trial court's finding of appropriate and professional conduct by appellant's counsel, clearly refutes appellant's position. (Tr. at 126.)

Appellant asserts Sgt. Shinaver's testimony, that he saw appellant throw a white bag later determined to contain items from Mr. Haggerty's residence, was prejudicial and should not have been admitted. However, appellant provides, and we find no basis for this assertion.

Appellant also contends the police report was withheld from him, and his counsel failed to object to the prosecutor's closing arguments. As we have already discussed, there is no evidence the police report was withheld from appellant, and his counsel cross-examined the officer who used the report to refresh his recollection during trial. Further, we have determined there was no basis for appellant's prosecutorial misconduct claim pertaining to the prosecutor's closing arguments. Therefore, we are not able to find error in trial counsel's alleged failure to object.

Appellant contends his counsel was ineffective for failing to request an instruction on a lesser-included offense. Again, we have already determined that appellant was not entitled to a jury instruction on a lesser-included offense in this case. Further, trial counsel's failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. *Dennis,* supra.

Lastly, appellant contends under this assignment of error that his counsel was ineffective for failing to obtain an "eyewitness expert." However, *State v. Madrigal* (2000), 87 Ohio St.3d 378, disposes of this argument. In *Madrigal,* the Supreme Court of Ohio declined to find ineffective assistance of counsel based on the failure to employ an eyewitness identification expert because the argument was purely speculative since "nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." *Id.* at 390-391.

Accordingly, we overrule appellant's first assignment of error.

*State v. Hillman, supra*, 2008 WL 2058163. Again, petitioner has failed to establish that the

state appellate court's decision is unreasonable so as to warrant habeas corpus relief. 28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to

demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a pre-trial motion to suppress Haggerty's in-court identification of him. Identification testimony based upon a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates a criminal defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986), quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968); *see also Stovall v. Denno*, 388 U.S. 293. "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. at 198. A court must first determine whether the pre-trial identification procedure employed was unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir.1994). If so, that Court must then consider the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Id.*, at 1070, citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992); *Neil v. Biggers*, supra, 409 U.S. at 199-200; *Thigpen v. Cory, supra*, 804 F.2d at 895. In making this determination, the Court must consider the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter v. Edwards, supra*, 35 F.3d at 1070, citing *Manson v. Brathwaite*, 432 U.S. at 114; *Neil*

*v. Biggers, supra*, 409 U.S. at 199-200.

Haggerty alerted to the sound of footsteps walking back and forth in his apartment when his roommates were not home. *Trial Transcript*, at 22. He called 911 and looked out his bedroom window and saw someone leaving his house. *Id.*, at 24. He watched as the suspect walked away and police arrived with a flashlight. *Id.*, at 28-29. He lost sight of the suspect for about twenty seconds. *Id.*, at 31. He never saw the face of the man who entered his home. *Trial Transcript*, at 39. Haggerty was 50 to 70 feet away when he identified petitioner as matching the general description of the intruder in his home, and petitioner was the only non-police officer present. *Id.* at 52, 54. Haggerty described the intruder to the 911 operator as a black man wearing dark clothing, carrying a white bag and wearing a white hat. *Id.*, at 26, 28-29. Petitioner was wearing dark clothing and a light colored, whitish colored hat. Haggerty said that petitioner "absolutely" matched the description of the suspect he saw leaving his residence with a white bag. *Id.*, at 32. He never saw that person's face. *Id.*, at 38.

> The suspect when he exited the back of the home he held his
> head down and I could only see the top and back obviously
> when he was walking away I could see the back of his head.

*Id.* Haggerty said the intruder in his home was six foot one or six foot two and thin. *Id.* On cross examination, he acknowledged that he had not given any physical description of the burglar to the 911 operator, but to police and only after they had already stopped petitioner. *Id.*, at 52.

A show-up, as used here by police when Haggerty identified petitioner, is inherently

suggestive. *Summit v. Bordenkircher*, 608 F.2d 247, 252 (6th Cir .1979). "When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification." Nonetheless, the totality of circumstances fail to indicate that Haggerty's in-court identification of petitioner was constitutionally prohibited, *see Neil v. Biggers, supra*, 409 U.S. at 199-200, or that petitioner was denied the effective assistance of counsel because his attorney failed to file a motion to suppress Haggerty's in-court identification of him.

Haggerty could not positively identify petitioner as the intruder of his home at trial. When asked if he could identify petitioner at trial, Haggerty stated:

> Facially, no, but the build, his build matches the description of the suspect that I thought I saw on that night and I told the burglary detective that, but as far as his face goes I do not recognize his face.

*Id.*, at 42. He only identified petitioner as matching the general description of the man he saw leaving his house:

> Q. So that night you did not tell the officer that that's the guy that was in my house?
>
> A. They said does he match the description of the guy and I said yes it does.

*Id.*

Therefore, the totality of circumstances fails to indicate that Haggerty's identification of petitioner as matching the general description of the person he saw leaving his home, was constitutionally prohibited. *See Neil v. Biggers, supra*, 409 U.S. at 199-200. Haggerty had

60

adequate opportunity, although it was dark, to obtain such a general description while watching the intruder exit his house and walk away, and he was "absolutely" certain that petitioner matched the general description of the person he saw leaving his house, making such identification immediately upon police arrival, which also was immediate. Therefore, petitioner has failed to meet the two-pronged *Strickland* test based on counsel's failure to file a motion to suppress Haggerty's in-court identification. See *Knowles v. Mirzayance*, 129 S.Ct.1411, 1420 (2009), citing *Strickland*, at 690; *Thomas v. Varner*, 428 F.3d 491, 502 (3rd Cir. 2005)(It is not objectively unreasonable for counsel to decline to file a motion to suppress where the motion is plainly without merit or the evidence is of little probative value). Further, defense counsel cross examined Haggerty on the issue, and on the fact that petitioner was actually arrested wearing a grey hat with black lining and a "P" on it, and that Haggerty was unable to describe the clothing further other than to say the intruder was wearing dark clothing. *Id.*, at 50. Because Haggerty was unable to identify petitioner as other than matching the general description of the person he saw leaving his house, petitioner likewise has failed to establish the ineffective assistance of counsel based on his attorney's failure to call a defense expert on eyewitness identification.

> The Sixth Circuit on at least two occasions has held that the failure of trial counsel to obtain an expert in eyewitness identification did not amount to ineffective assistance of counsel. *See Ferensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir.2007) (citing *Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir.2004)...; *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at *1-2 (6th Cir. September.26, 1996) (holding that "any allegedly ineffective assistance" caused by counsel's failure to "hir[e] an expert in eyewitness identification" did not prejudice

the petitioner within the meaning of *Strickland*). Other federal
courts have held that a defense attorney's cross-examination of
eyewitnesses, as opposed to calling an expert, is a sufficient
method of attempting to deal with the issues presented by
eyewitness testimony. *See Madrigal v. Bagley*, 276 F.Supp.2d
744, 791-92 (N.D. Ohio 2003) (collecting cases)[.]

*Davenport v. Curtis*, 2008 WL 4534198 (E.D. Michigan October 6, 2008). Further, as noted

by the state appellate court, nothing in the record suggests that such testimony would have

assisted the defense.

Petitioner alleges that his attorney "contributed to... perjured testimony" at trial by

advising the prosecutor, prior to trial, that petitioner told defense counsel he had been

wearing light colored pants on the night of his arrest, whereupon the prosecutor allegedly

attempted to obtain petitioner's clothes from the Franklin County jail and told police to

testify that petitioner was wearing light colored pants even though the 911 tape indicated

that Haggerty described an intruder wearing dark clothing. *Petition*, at 15. This allegation,

as discussed previously, is entirely without support. He further complains that his

attorney failed to object to Officer Shinaver's testimony that he saw petitioner throw a

white bag and "aided the prosecution in concealing the police report from the

consideration of the jury." *Id.*, at 15. However, nothing supports petitioner's allegation

that Officer Shinaver lied when he said he saw petitioner throw a white bag to the ground,

that such testimony was inadmissible at trial, or that failure to admit the police report

prejudiced the defense. The record likewise reflects no basis for objection to Officer

Shinaver's testimony that petitioner was wearing light colored pants at the time of his

arrest, or that petitioner was prejudiced thereby. Defense counsel argued in closing, that such testimony established that petitioner was not the man that Haggerty had seen leaving his home on the night in question. *Supplemental Trial Transcript*, at 26.

Claim one is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp

United States Magistrate Judge